1  Kane Moon (SBN 249834)
        kmoon@moonlawgroup.com
2  H. Scott Leviant (SBN 200834)
        hsleviant@moonlawgroup.com
3  Mariam Ghazaryan (SBN 341119)
        mghazaryan@moonlawgroup.com
4  **MOON LAW GROUP, PC**
   1055 W. Seventh St., Suite 1880
5  Los Angeles, California 90017
   Telephone: (213) 232-3128
6  Facsimile: (213) 232-3125

7  Attorneys for Plaintiff LEEANN BRUTOUT

8

9                  UNITED STATES DISTRICT COURT

10              SOUTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12  LEEANN BRUTOUT, individually, and on behalf of all others similarly situated, | Case No.: 3:21-cv-01533-TWR-AGS |
| 13 | <u>CLASS ACTION</u> |
| 14       *Plaintiff*, | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL** |
| 15       vs. | **APPROVAL OF CLASS ACTION SETTLEMENT AND** |
| 16  MAP COMMUNICATIONS, INC., a Delaware corporation; and DOES 1 | **CERTIFICATION OF SETTLEMENT CLASS; MEMORANDUM OF** |
| 17  through 10, inclusive, | **POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 18       *Defendants*. | |
| 19 | Date:          October 26, 2023 |
| 20 | Time:          1:30 p.m. Courtroom:  3A |
| 21 | Judge:        Hon. Todd W. Robinson |
| 22 | Action Filed:      July 21, 2021 Action Removed:  August 30, 2021 |
| 23 | Trial Date:        Not set |

24

25

26

27

28

TO THE COURT, TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 26, 2023, at 1:30 p.m., in Courtroom 3A of the above-entitled Court, located at 221 West Broadway, San Diego, CA 92101, Plaintiff LEEANN BRUTOUT ("Plaintiff") will and hereby does move the Court for an order granting final approval of the CLASS ACTION AND PAGA SETTLEMENT AGREEMENT AND CLASS NOTICE ("Settlement" or "Agreement" herein) reached with Defendant MAP COMMUNICATIONS, INC. ("Defendant" or "MAP"), a true and correct copy of which is attached as Exhibit 1 to the Declaration of H. Scott Leviant submitted herewith. Specifically, Plaintiff moves for an order to:

1. grant final approval of the terms of the Agreement as fair, reasonable and adequate under Rule 23(e) of the Federal Rules of Civil Procedure, including the amount of the settlement; the amount of distributions to class members; the procedure for giving notice to class members; the procedure for opting out of the settlement; and the amounts allocated to the service payment and attorney's fees and costs;

2. certify for settlement purposes the Settlement Class described in the Agreement;

3. appoint Plaintiff as representative for the Settlement Class;

4. appoint Moon Law Group, PC (formerly named Moon & Yang, APC) as counsel for the Settlement Class;

5. approve the use of Phoenix Settlement Administrators as the settlement administrator;

6. authorize distributions from the common fund; and,

7. enter judgment on the terms specified in the Agreement and approved by the Court.

Plaintiff's motion is based on this Notice, the following Memorandum of Points and Authorities, the Declarations of counsel, Plaintiff (previously filed as ECF Dkt No.

26-2), and the Settlement Administrator, all other pleadings and papers on file in this action, and any oral argument or other matter that may be considered by the Court.

  **NOTE**:  The Parties have conferred extensively about this Motion, and it is not opposed.  Rather, the Motion is required as part of the Parties' proposed Settlement.

         Respectfully submitted,

Dated:   September 28, 2023    **MOON LAW GROUP, PC**

         By:_____

         Kane Moon
         H. Scott Leviant
         Mariam Ghazaryan

         Attorneys for Plaintiff

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES ................................................................................... iii

I.   INTRODUCTION ......................................................................................... 1

II.  THE NOTICE PROCESS WAS SUCCESSFULLY COMPLETED AFTER
     PRELIMINARY APPROVAL.......................................................................... 1

III. SUMMARY OF SETTLEMENT TERMS.......................................................... 2

IV.  BACKGROUND ........................................................................................... 6

     A.   Plaintiff's Claims............................................................................ 6

     B.   Pre-Mediation Data Production and Analysis........................... 7

     C.   Settlement ....................................................................................... 7

V.   CLASS DEFINITION ................................................................................... 8

VI.  THE SETTLEMENT MERITS FINAL APPROVAL ......................................... 8

     A.   Plaintiff's Claims Merit Class Action Treatment for Settlement
          Purposes ....................................................................................... 10

          1.   Numerosity ........................................................................... 10

          2.   Commonality and Predominance of Common Issues ...... 11

          3.   Typicality ............................................................................ 12

          4.   Adequate Representation.................................................... 13

          5.   Superiority ........................................................................... 13

     B.   The Settlement Falls Within the Range of Reasonableness and Should
          Be Finally Approved, Consistent with the Grant of Preliminary
          Approval....................................................................................... 14

          1.   The Value of the Settlement to the Class Is Fair and Adequate.......16

          2.   The Fee Award Is Reasonable and Should Receive Final Approval21

               a)   A Reasonable Result Was Achieved on Behalf of the Class....21

               b)   The Experience, Reputation, and Ability of Class Counsel .....22

Case No.:  3:21-cv-01533-TWR-AGS          Page i          *Brutout v. MAP Communications, Inc.*

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

c)    The Effort Required by the Litigation Justifies the Fee ...........22

d)    Class Counsel Was Precluded from Other Employment..........22

e)    The Complexity of the Legal and Factual Issues .....................22

f)    Class Counsel Assumed Substantial Risk ................................23

g)    The Fee is Reasonable Under the Common Fund Doctrine .....23

h)    A Lodestar Analysis Supports the Requested Fee...................23

3.    The Cost Reimbursement Requested Is Reasonable and Should Receive Final Approval ......................................................................24

4.    The Service Payment Is Reasonable....................................................24

5.    The Costs of Administration Are Reasonable ...................................25

VII. CONCLUSION .......................................................................................... 25

Case No.: 3:21-cv-01533-TWR-AGS          Page ii          *Brutout v. MAP Communications, Inc.*

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

1

TABLE OF AUTHORITIES

2

3 **FEDERAL DECISIONAL AUTHORITY**

4 *Acosta v. Trans Union LLC*, 243 F.R.D. 377 (C.D. Cal. 2007) ..........................................9

5 *American Eagle Ins. Co. v. King Resources Co.*, 556 F.2d 471 (10th Cir. 1977) ...........21

6 *Armstrong v. Board of School Directors of the City of Milwaukee*,

7     616 F.2d 305 (6th Cir. 1980) ...................................................................... 9, 10

8 *Baldwin & Flynn v. Nat'l. Safety Associates*, 149 F.R.D. 598 (N.D. Cal. 1993) ............10

9 *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975).................................................. 10, 11, 12

10 *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) .........................................................23

11 *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*,

12     917 F.2d 1171 (9th cir. 1990) ...............................................................................12

13 *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,

14     244 F.3d 1152 (9th Cir. 2001) ..................................................................... 11, 14

15 *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ......................................................10

16 *Elkins v. Equitable Life Ins. Of Iowa*, 1998 WL 133747 (M.D. Fla. 1998)....................14

17 *Hammon v. Barry*, 752 F.Supp 1087 (DDC 1990).........................................................15

18 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...................................... passim

19 *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) .........................................12

20 *In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989)....................................23

21 *In re Armored Car Anti-Trust Litigation*, 472 F.Supp 1357 (ND GA 1979) .................15

22 *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675 (N.D. Cal. 1986) .......................11

23 *In re Heritage Bond Litig.*, 2005 U.S Dist. LEXIS 13555 (C.D. Cal. June 10, 2005)....22

24 *In re Immune Response Securities Litigation*, 497 F.Supp.2d 1166 (S.D. Cal. 2007)....16

25 *In re Public Serv. Co.*, 1992 U.S. Dist. LEXIS 16326 (S. D. Cal. July 28, 1992) ..........22

26 *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003)..................................22

27 *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270 (S.D. Ohio 1997)..............24

28 *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001) ....................................24

Case No.: 3:21-cv-01533-TWR-AGS      Page iii      *Brutout v. MAP Communications, Inc.*

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

*Lewis v. Gross*, 663 F.Supp. 1164 (E.D.N.Y. 1986) ............................................11

*Linney v. Cellular Alaska Partnership*, 1997 WL 450064 (N.D. Cal. 1997) ................16

*Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*,
    834 F.2d 677 (7th Cir. 1987)............................................................................15

*Officers for Justice v. Civil Service Commission of City and County of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) .........................................................................15

*Pridd v. Edelman*, 883 F.2d 438 (6th Circuit 1989) ...........................................15

*Reynolds v. National Football League*, 584 F.2d 280 (8th Cir. 1978)..........................21

*Riordan v. Smith Barney*, 113 F.R.D. 60 (N.D. Ill. 1986).................................10

*Sommers v. Abraham Lincoln Federal Savings & Loan Association*,
    79 F.R.D. 571 (ED PA 1978) .........................................................................15

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ............................................. 9, 10, 15

*Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688 (M.D. Fla. 2005) ............14

*Valentino v. Carter-Wallace*, 97 F.3d 1227 (9th Cir. 1996)..................................14

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976).................................9

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995).........................25

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) .............................. 21, 22, 23

*Wang v. Chinese Daily News*, 231 F.R.D. 602 (C.D. Cal. 2005)............................. 10, 12

*Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188 (9th Cir. 2001)......................12

**CALIFORNIA DECISIONAL AUTHORITY**

*7-Eleven Owners for Fair Franchising v. Southland Corp.*,
    85 Cal. App. 4th 1135 (2000) .........................................................................21

*Bihun v. AT&T Information System*, 13 Cal. App. 4th 976 (1993) ..............................24

*Cundiff v. Verizon California*, 167 Cal. App. 4th 718 (2008)...................................23

*Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1 (2014).........................................16

*Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629 (1995)..........................22

*Serrano v. Priest*, 20 Cal. 3d 25 (1977) ........................................... 21, 22, 23, 24

*Wershba v. Apple Computer*, 91 Cal. App. 4th 224 (2001) .............................................22

**STATUTES**

Labor Code § 2699 ...........................................................................................17

**RULES**

Fed. R. Civ. P. 23 ................................................................................. passim

**TREATISES**

7 Witkin, B.E., CALIFORNIA PROCEDURE (2007 Supp.) §§ 255-261................................23

*Manual for Complex Litigation Second* § 30.44 (1985).......................................9

**OTHER AUTHORITIES**

*Findings of the Study of California Class Action Litigation*, 2000-2006 ........................20

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This is a putative wage and hour class action on behalf of non-exempt employees employed by Defendant at any time from July 21, 2017 to December 31, 2022.  The core issues in the case were based on allegations by named Plaintiff LEEANN BRUTOUT ("Plaintiff") that Defendant did not provide legally compliant meal periods and rest breaks, did not reimburse employees for business expenses, did not compensate employees for all time worked, and, as a result, wage statements provided to employees were rendered inaccurate, final wages were not timely paid, and the conduct violated the California Private Attorneys General Act of 2004 ("PAGA") and the Unfair Competition Law ("UCL").  Defendant disputes these claims.

The case was thoroughly investigated by all Parties.  Following the production of policy documents, time records, and pay data, and vigorous negotiation at mediation, Plaintiff and Defendant (Plaintiff and Defendant collectively referred to herein as the "Parties") reached a proposed class action settlement valued at **$380,000.00** for 719 putative class members.[1]

The Parties believe the Settlement to be fair and reasonable, to adequately reflect the potential liability and substantial risks in this matter, and to be the result of thorough factual and legal analyses and arms-length negotiations.  Through this Motion, Plaintiff requests certification of a Settlement Class pursuant to Fed. R. Civ. P. 23 and final approval of the proposed class action settlement.

## II.   THE NOTICE PROCESS WAS SUCCESSFULLY COMPLETED AFTER PRELIMINARY APPROVAL

The Parties have fulfilled the class notice procedures set forth in the Court's Preliminary Approval Order and the Class Members' responses have been

---

[1] Many hundreds of Class Members worked for less than a month and will receive a comparatively tiny portion of the Net Settlement Amount.  As such, the "average" gross payment is misleadingly small, and longterm employees will receive substantially more. The final class size is also smaller than was estimated at preliminary approval.

overwhelmingly positive.  The claims administrator, Phoenix Settlement Administrators ("Settlement Administrator" or "Phoenix"), sent individual notices to 722 Class Members on July 12, 2023.[2]  (Declaration of Taylor Mitzner ("Mitzer Decl."), ¶ 5.)  The list of Class Members utilized by Phoenix was prepared by (1) obtaining a list of Class Members from Defendant, and (2) updating all addresses through the National Change of Address System.  (Mitzner Decl., ¶¶ 3-4.) Address traces were performed and updated addresses were obtained for 57 of the 73 returned packets.  (Mitzner Decl., ¶ 6.)  16 Notices were undeliverable because current addresses could not be located even after using consumer databases to search for current addresses.  (Mitzner Decl., ¶ 7.)  The best Notice practicable was provided.

*No* Class Members have objected to the settlement.  (Mitzer Decl., ¶ 9.)  Three Class Members submitted valid requests for exclusion.  (Mitzner Decl., ¶ 8.)  Phoenix's costs for administration will be $10,000.00.  (Mitzner Decl., ¶ 17.)

## III.   SUMMARY OF SETTLEMENT TERMS

The full terms of the settlement are set forth in the Stipulation.  The primary material terms are as follows:

The provisions of the proposed Settlement include the following:

      (a)    Defendant agrees not to oppose certification for purposes of Settlement (Settlement, ¶ 12.1);

      (b)    <u>Class</u>:  All persons employed by MAP in California and classified as non-exempt employees who worked for MAP during the Class Period (the "Class Period" is July 21, 2017 to December 31, 2022).

---

[2] 11 individuals with very short employment durations were erroneously omitted from the notice process due to a data processing error. Rather than holding up the settlement payments for 719 Participating Class Members, the Parties are working out details for a process to send a post-approval notice to the 11 individuals and give them the option of receiving the payment they would if they had received the original notice or opting out. This will provide finality for Defendant, avoid delaying payment to 719 Participating Class Members, and give the 11 individuals the chance to benefit from the Settlement. Administration costs will not be increased by this process and Class Counsel will implement this process as part of the fees awarded through this Motion.

(Settlement, ¶ 1.5, 1.12.) "Participating Class Members" are those Class Members who do not submit timely exclusion requests to the Settlement Administrator. (Settlement, ¶ 1.9, 1.35);

(c) <u>Settlement Amount</u>:  Defendant will pay a maximum of **$380,000.00**, referred to as the Gross Settlement Amount (or GSA herein), resulting in an estimated average **gross** payment per Class Member of approximately **$528.51** (Settlement, ¶ 1.22);

(d) <u>Class Size</u>:  **719** individuals who worked **30,039** workweeks.[3] (Settlement, ¶¶ 4.1, 8; Mitzner Decl., ¶ 12.)

(e) <u>PAGA Group Size</u>:  363 Aggrieved Employees worked **7,189** pay periods.[4] (Settlement, ¶¶ 4.1; Mitzner Decl., ¶ 15.)

(f) <u>PAGA Period</u>: July 17, 2020 to December 31, 2022. (Settlement, ¶ 1.31);

(g) <u>Data Sampling</u>:  Time and pay records for a random sample of putative class members was provided, with a margin of error for extrapolations calculated to be 7.95%, based on the sample size. (Leviant Decl., ¶ 6.)

(h) <u>Valuation Analysis</u>:  Plaintiff addresses claims analysis herein, at Part VI.B.1, and in the Declaration of Leviant, at Paragraph 18;

(i) <u>No Reversion</u>: The Settlement is a ***non-reversionary*** settlement (Settlement, ¶ 3.1);

(j) <u>Certification</u>:  Plaintiff addresses certification requisites herein, at Part VI.A., and in the Declaration of Leviant, at Paragraphs 35-41;

(k) <u>No Claim Form</u>:  No claim form is required (Settlement., ¶ 3.1);

(l) <u>Class Release</u>:  The Settlement will release specified wage-and-hour

---

[3] These amounts are lower than was estimated in the preliminary approval motion.

[4] These amounts are lower than was estimated in the preliminary approval motion.

Case No.:  3:21-cv-01533-TWR-AGS                Page 3                *Brutout v. MAP Communications, Inc.*

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
CERTIFICATION OF SETTLEMENT CLASS**

1    claims asserted in the Action for Participating Class Members (those

2    Class Members who do not opt out) (Settlement, ¶¶ 2.1, 5.2);

3    (m)   PAGA Release:  Class Members will release the PAGA Claims that

4    were alleged, or reasonably could have been alleged, based on the

5    same factual predicate as the claims stated in the Action and Plaintiff's

6    LWDA Notice Letter, regardless of whether they opt out of the class

7    portion of the Settlement (Settlement, ¶¶ 2.1, 5.3);

8    (n)   Release Effective Date:  The Release is not active until Defendant

9    tenders all payments required under the Settlement to the Settlement

10   Administrator (Settlement, ¶ 5);

11   (o)   Net Settlement Amount Available to the Class: After deducting Class

12   Counsel's attorneys' fees and costs, service payment to Plaintiff,

13   administration costs, and the PAGA penalty, the remainder will be

14   available for distribution to Class Members who do not opt out, with

15   each Class Member receiving a share based on the number of

16   workweeks each Class Member worked for Defendant within the

17   Class Period.  The Net Settlement Amount is estimated to be at least

18   **$167,833.33**, resulting in an average **net** payment per Class Member

19   of at least **$220.83,** before any tax withholdings. (Settlement, ¶ 1.28);

20   (p)   Tax Allocation: The amounts distributed to Class Members will be

21   characterized as 25% alleged unpaid wages, 75% to penalties and

22   interest, and PAGA Settlement Payments will be allocated as 100%

23   penalties. (Settlement, ¶ 3.2.4.1, 3.2.5.2.)  After performing a current

24   value analysis based on the risk facing each claim, the exposure

25   analysis shows that 88.24% of the exposure is attributable to penalties.

26   Here, the allocation of 25% to wages is both supportable and

27   conservative.  (Leviant Decl., ¶ 18.)

28   (q)   Employer's Portion of Payroll Taxes Paid Separately: Defendant's

1   portion of payroll taxes (e.g., FICA, FUTA, etc.) owed on any

2   settlement payments to Class Members that constitute wages will be

3   paid separate and apart from the GSM (Settlement, ¶ 3.1);

4   (r)   Settlement Administrator:  The notice portion of the Settlement is

5   administered by a third-party Administrator, Phoenix Settlement

6   Administrators, and its costs of administration services are **$10,000.00**.

7   (Settlement, ¶ 3.2.3; Mitzner Decl., ¶ 17 and Exh. B.)

8   (s)   Class Data for Administration:  The Settlement Administrator will

9   receive the Class List within 14 calendar days of Preliminary

10   Approval, use the NCOA database to update the Class List, and then

11   use skip tracing on returned Notices (Settlement, ¶ 4.2);

12   (t)   Notice:  The Notice will issue within 14 days of receipt of the Class

13   List (Settlement, ¶ 7.4.2).  The Notice describes how to dispute

14   workweeks, submit an objection in writing, in person, or through an

15   attorney, or request exclusion (Settlement, ¶¶ 7.4 – 7.7);

16   (u)   Notice Language:  Notice will issue in English only, as all Class

17   Members were required to speak English (Settlement, ¶ 1.11);

18   (v)   Objections:  Objections can be submitted in person, through an

19   attorney, or in writing to the Settlement Administrator, with no pre-

20   requisite to being heard (Settlement, ¶ 7.7);

21   (w)   Exclusion Requests:  The procedure for exclusion requests, mailing a

22   request to the Settlement Administrator, is the same as the procedure

23   for submitting a written objection (Settlement, ¶¶ 7.5 and 7.7);

24   (x)   PAGA Allocation: From the GSA, **$40,000** will be allocated to settle

25   claims brought pursuant to the California Private Attorneys General

26   Act, Labor Code § 2699 *et seq*. ("PAGA"), and seventy-five percent

27   (75%), or **$30,000**, will be paid to the California Labor & Workforce

28   Development Agency. (Settlement, ¶¶ 1.34, 3.2.5.);

(y)   Notice to LWDA:  Notice was provided prior to the filing of this Motion.  Evidence is attached to the Leviant Declaration;

(z)   Enhancement/Service Awards to Plaintiff: Defendant will not oppose the application for a Class Representative Service Payment of up to **$7,500.00** for Plaintiff, to be paid from the GSA. (Settlement, ¶ 3.2.1);

(aa)  Fees and Costs:  Defendant will not oppose Class Counsel's application for fees not to exceed 33 1/3% of the GSA **($126,666.67)**, and actual costs, in an amount not to exceed **$20,000**, to be paid out of the GSA (Settlement, ¶ 3.2.2);

(bb)  Check Void Period:  Settlement checks will be valid for 180 days (Settlement, ¶ 4.4.1);

(cc)  Uncashed Checks:  Any settlement checks that are mailed to the Class Members and remain uncashed after 180 days of the date of issuance will be cancelled, and the moneys will be directed to the California Controller's Unclaimed Property Fund (Settlement, ¶ 4.4.3);

(dd)  Judgment Notice:  Judgment will be posted on the Settlement Administrator's website after entry (Settlement, ¶ 7.8.1);

(ee)  Confidentiality Provisions:  The Settlement permits Class Counsel to discuss the Settlement with Class Members (Settlement ¶ 12.2).

(Leviant Decl., ¶ 11.)  A true and correct copy of the CLASS ACTION AND PAGA SETTLEMENT AGREEMENT AND CLASS NOTICE is attached thereto as Exhibit "1."

## IV.   BACKGROUND

### A.   Plaintiff's Claims

On July 21, 2021, Plaintiff commenced this Action by filing a Complaint alleging causes of action against MAP, alleging that MAP (1) failed to provide meal periods (Lab. Code §§ 204, 223, 226.7, 512 and 1198 and Wage Order); (2) failed to provide rest periods (Lab. Code §§ 204, 223, 226.7 and 1198 and Wage Order); (3) failed to pay minimum and overtime time wages (Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1997.1 and 1198 and

Wage Order as to minimum wage); (4) failed to provide accurate itemized wage statements (Lab. Code §§ 226(a)); (5) failed to timely pay all final wages (Lab. Code §§ 201, 202 and 203); (6) failed to indemnify for job-related expenses (Lab. Code § 2802); and, (7) engaged in Unfair Competition (Bus. & Prof. Code §§ 17200 et seq.). In conjunction with a Motion for Preliminary Approval, Plaintiff will seek leave to file a First Amended Complaint alleging an additional claim for relief against MAP for violation of PAGA. The First Amended Complaint will be the operative complaint in the Action for purposes of settlement (the "Operative Complaint."). (Declaration of H. Scott Leviant ["Leviant Decl."], at ¶ 4.)

Pursuant to Labor Code § 2699.3(a), Plaintiff gave timely written notice to MAP and the LWDA by sending the PAGA Notice. (Leviant Decl., at ¶ 5.)

### B. <u>Pre-Mediation Data Production and Analysis</u>

The Parties have conducted significant investigation of the facts and law during the prosecution of this Litigation. (Leviant Decl., at ¶ 6.) Such investigation has included informal written discovery; the pre-mediation exchange of information and voluminous data; and, numerous communications between the Parties. (*Id*.) The Parties have further investigated the applicable law as applied to the alleged claims of Plaintiff and potential defenses thereto, and the damages claimed by Plaintiffs. (*Id*.)

After reviewing documents regarding Defendant's wage and hour policies and practices and other information obtained during the informal exchange of discovery, Class Counsel were able to evaluate the probability of class certification, success on the merits, and the reasonably obtainable maximum monetary exposure for all claims. Class Counsel reviewed these records and prepared a damage analysis prior to mediation. Class Counsel also investigated the applicable law regarding the claims and defenses asserted in the litigation. (Leviant Decl., at ¶ 7.)

### C. <u>Settlement</u>

On June 21, 2022, the Parties participated in an all-day mediation presided over by experienced mediator Steve Serratore, Esq., a well-regarded mediator who has mediated

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

many wage and hour class actions. (Leviant Decl., ¶ 8.)  At the mediation, the Parties discussed at length the burdens and risks of continuing with the litigation as well as the merits of the claims and defenses. (*Id*.)  The Action did not settle at that time. (*Id*.)  The Parties continued to review data produced for mediation and exchange analyses of potential exposure in the Action. (*Id*.)  In subsequent discussions, a settlement was reached in this matter, based on a review of exposure analysis data exchanged by the Parties, and a long form settlement agreement was drafted by the Parties (the Agreement). (*Id*.)

Plaintiff and Class Counsel are aware of the burdens of proof necessary to establish liability for the claims asserted here, both generally and in response to Defendant's defenses.  (Leviant Decl., ¶ 9.)  Plaintiff and Class Counsel have considered Defendant's agreement to enter into a Settlement that confers substantial relief to the Class.

Based on the foregoing, Plaintiff and Class Counsel have determined that the Settlement set forth in this Agreement is a fair, adequate, and reasonable Settlement and is in the best interests of the Class.  (Leviant Decl., ¶ 10.)  Solely for the purpose of settling this case, the Parties stipulate to class certification. (*Id*.)  If this Settlement is not approved by the Court for any reason, Defendant reserves its rights to contest class certification. (*Id*.)  This Settlement, if approved by the Court, will result in the termination with prejudice of the litigation through the entry of the Judgment and the release of all Released Claims for all Class Members, including all within the class definition who have not elected to exclude themselves from the Class.  (*Id.*)

## V.    CLASS DEFINITION

The Class is defined as follows:

All persons employed by MAP in California and classified as non-exempt employees who worked for MAP during the Class Period, (the "Class Period" is July 21, 2017 to December 31, 2022).  (Settlement, ¶¶ 1.5, 1.12.)

(Leviant Decl., ¶ 34 and Exhibit 1.)

## VI.   THE SETTLEMENT MERITS FINAL APPROVAL

The law favors settlement, particularly in class actions and other complex cases,

where substantial resources can be conserved by avoiding the time, cost, and the rigors of formal litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). These concerns apply in a case such as this, where allegedly wrongful practices potentially affected numerous employees, in relatively small amounts.

Any settlement of class litigation must be reviewed and approved by the court. This is done in two steps: (1) an early (preliminary) review by the court, and (2) a final review after notice has been distributed to the class for their comment or objections. The *Manual for Complex Litigation Second* states at § 30.44 (1985):

> A two-step process is followed when considering class settlements … if
> the proposed settlement appears to be the product of serious, informed,
> non-collusive negotiations, has no obvious deficiencies, does not
> improperly grant preferential treatment to class representatives or
> segments of the class, and falls within the range of possible approval, then
> the court should direct that notice be given to the class members of a
> formal fairness hearing, at which evidence may be presented in support of
> and in opposition to the settlement.

When parties reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Acosta v. Trans Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007).

"The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.' This hearing is not a fairness hearing; its purpose, rather is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (6th Cir. 1980) [quoting Manual for Complex Litigation s 1.46, at 53-55 (West 1977)]. "[T]he district court must assess whether a class exists," *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003), *i.e.*, whether the lawsuit qualifies as a class action under Rule 23. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (reviewing settlement

to ensure compliance with requirements of Rule 23(a) and Rule 23(b)(3)).

At the second stage of the approval process, after class members have had an opportunity to object to the settlement, the court makes a final determination whether the settlement is "fair, reasonable and adequate" under Rule 23(e).  *Armstrong*, 616 F.2d at 314; *see Staton*, 327 F.3d at 952; *see also* Rule 23(e)(C)(1), which provides that a court may finally approve a settlement of a class action if it finds after a hearing that the settlement is "fair, reasonable, and adequate" and Rule 23(e)(C)(4), which provides that any class member may object to a proposed settlement.

### A. <u>Plaintiff's Claims Merit Class Action Treatment for Settlement Purposes</u>

In determining the propriety of class certification, a court may not delve into the underlying merits of claims.  The fundamental question "is not whether . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

The Ninth Circuit has established that, when ruling on the propriety of class certification, a district court "is bound to take the substantive allegations of the complaint as true." *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975).  A court "may not require plaintiffs to make a preliminary proof of their claim; it requires only sufficient information to form a reasonable judgment." *Baldwin & Flynn v. Nat'l. Safety Associates*, 149 F.R.D. 598, 600 (N.D. Cal. 1993).  Under these standards, this action meets the requirements for certification under Rule 23(a) and Rule 23(b)(3).

### 1. Numerosity

Under Rule 23(a)(1), a class action may be maintained where "the class is so numerous that joinder of all members is impracticable."  In determining whether joinder would be impracticable, a court may consider not only the sheer number of class members, *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (numbers alone may be dispositive), but also "the nature of the action, the size of the individual claims, [and] the inconvenience of trying individual suits." *Wang v. Chinese Daily News*, 231 F.R.D. 602, 606 (C.D. Cal. 2005).  "A class action may proceed upon estimates as to the size of the

proposed class." *Lewis v. Gross*, 663 F. Supp. 1164, 1169 (E.D.N.Y. 1986).  *See also, In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 679 (N.D. Cal. 1986) (certified where plaintiffs did not establish exact size, but demonstrated class would "obviously be sufficiently numerous").  In this action, the Class is now composed of 719 individuals. (Leviant Decl., ¶ 36; Mitzner Decl., ¶¶ 5, 8.)  It is sufficiently numerous that the individual joinder of all members is impracticable.

## 2.    Commonality and Predominance of Common Issues

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." This commonality requirement is "construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Plaintiff need not demonstrate that all questions of fact and law are common.  "The existence of shared legal issues with divergent factual predicates is sufficient." *Id.*  Where a class is united by a common interest in determining whether a defendant's broad course of conduct is actionable, commonality is not defeated "by slight differences in class members' positions." *Blackie,* 524 F.2d at 901 n.17.

In this litigation, all Class Members have shared a common interest in determining: whether Defendant provided legally compliant meal periods and rest breaks to Class Members; whether Defendant paid employees for all time worked; whether Defendant violated the itemized wage statement provisions of Labor Code § 226 by not providing accurate information as to wages; and whether Defendant's policies and practices violated California Business & Professions Code §§ 17200 *et seq*.  Given the permissive standard that courts in the Ninth Circuit employ when determining commonality, certification of the Class for settlement purposes is appropriate as Rule 23(a)(2) is satisfied.

Once it is established that common issues of law or fact exist, for Rule 23(b)(3) purposes, the Court next examines whether those common issues predominate. The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).  Central to predominance is "the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix*

*Research Institute, Inc*., 253 F.3d 1188, 1189 (9th Cir. 2001). When common questions represent a significant aspect of the case and can be resolved for the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. It is well settled that the need for determining differing amounts of damages suffered by different class members does not preclude class certification. *See*, *Blackie*, 524 F.2d at 905; *Wang*, 231 F.R.D. at 613.

There are common issues that may predominate over individual issues in this litigation. For example: (1) whether Defendant uniformly failed to provide Class Members with legally compliant meal periods and rest breaks; (2) whether Defendant required or permitted employees to work off the clock; (3) whether Defendant provided putative Class Members with itemized wage statements that were inaccurate in violation of Labor Code § 226; and (4) whether Defendant failed to pay all overtime wages due and payable to former employees within the times specified under the California Labor Code.

### 3. Typicality

Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims . . . of the class." This factor is also construed permissively. *See Hanlon*, 150 F.3d at 1019-20. Representative claims are typical "if they are reasonably co-extensive with those of absent class members; they need not be identical." *Id*. at 1020. In other words, named plaintiffs need not be "identically situated" with all other class members. "It is enough if their situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990).

Typicality refers to the "nature of the claim . . . of the class representative, and not to the specific facts from which it arose." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The typicality requirement is satisfied where "the named Plaintiffs raise the same Labor Code violations as other putative class members." *Id*. Here, Plaintiff is raising the same claims as the putative class members. (Leviant Decl., ¶ 36; Dkt No. 26-2: Declaration of Brutout, ¶¶ 2-11.)

### 4.     Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequate representation turns on whether the named plaintiff and his counsel "have any conflicts of interest with other class members," and whether the named plaintiff and his counsel will "prosecute the action vigorously on behalf of the class." Adequacy may be established by the mere fact that counsel are experienced practitioners. *Hanlon*, 150 F.3d at 1020.

There are no conflicts of interest between Plaintiff and Class Members, and Plaintiff has shown and expressed a willingness to represent Class Members. (Dkt No. 26-2: Declaration of Brutout, ¶¶ 5-11.) The similarity of the claims asserted and remedies sought by Class Members and Plaintiff do not suggest any divergent interests held by Plaintiff. Defendant did not assert unique defenses against Plaintiff that it could not assert against any other Class Member. Also, there are no conflicts with Plaintiff's counsel.

Plaintiff's counsel have substantial class action experience and can adequately represent the Class. They have been appointed class counsel in many wage and hour class actions against major employers. (Leviant Decl., ¶¶ 21-26.)

### 5.     Superiority

In deciding whether to certify a class for settlement purposes, a court considers the following factors to determine whether a class action is superior: (a) class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; and (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum.[5] Some courts have found that the third Rule 23(b)(3) factor is "conceptually irrelevant in the context of a settlement." See *Strube*

---

[5] Rule 23(b)(3)(A)-(C). When a court reviews a class action settlement, it does *not* consider Rule 23(b)(3)(D), the fourth factor, regarding difficulties of managing a class action. *Amchem Products Inc. v. Woodward* (1997) 521 U.S. 591, 620 (in deciding whether to certify a class for settlement purposes, a district court "need not inquire whether the case, if tried, would present intractable management problems").

1   *v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005). "With the

2   settlement in hand, the desirability of concentrating the litigation in one forum is obvious."

3   *Elkins v. Equitable Life Ins. Of Iowa*, 1998 WL 133747, at *19 (M.D. Fla. 1998).

4           To determine whether the superiority element of Rule 23(b)(3) is satisfied, a court

5   compares a class action with alternative methods for adjudicating the parties' claims. Lack

6   of a viable alternative to a class action necessarily means that it satisfies the superiority

7   requirement. *See Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a

8   class action is a superior method for managing litigation if no realistic alternative exists").

9   "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities,

10  [the] superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartender Trust*

11  *Fund*, 244 F.3d at 1163. In *Culinary/ Bartender Trust Fund*, the Ninth Circuit held that

12  the "case involve[d] multiple claims for relatively small sums" and that the class action

13  clearly served as the only method that would "'permit the plaintiffs to pool claims which

14  would be uneconomical to litigate individually.'" *Id*. at 1163. The class action is superior

15  here as it is on the only method that will allow Class Members "to pool [their individual]

16  claims which would be uneconomical to litigate individually." *Id.*

17          The factors articulated in Rule 23(b)(3)(A), (B) and (C) also favor class

18  certification. It is difficult to believe that any Class Members have an interest in

19  individually controlling the prosecution of separate actions, given the relatively small sums

20  involved for any one Class Member. Any Class Member who wants to pursue a separate

21  action can opt out of the Settlement.

22          Also, it is desirable to concentrate the issues in this forum. The Settlement allows

23  all individuals to resolve similar claims against Defendant through a process that does not

24  even require the submission of a claim form.

25  **B.      The Settlement Falls Within the Range of Reasonableness and Should Be**

26  **Finally Approved, Consistent with the Grant of Preliminary Approval**

27          No single criterion determines whether a class action settlement meets the

28  requirements of Rule 23(e). The Ninth Circuit has directed district courts to consider a

variety of factors without providing an "exhaustive list" or suggesting which factors are most important. *See, Staton*, 327 F.3d at 959. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Service Commission of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "'an amalgam of delicate balancing, gross approximations and rough justice.'" *Id*. at 625. The ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the class as a whole." *Staton*, 327 F.3d at 961.

As the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective. *Officers for Justice*, 688 F.2d at 625. Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Id*. Accordingly, the Ninth Circuit will not reverse a district court's approval of a class action settlement "unless the fees and relief provisions clearly suggest the possibility that class interests gave way to self interest." *Staton*, 327 F.3d at 961.

There is a presumption that the negotiations were conducted in good faith. Newberg, §11.51; *Pridd v. Edelman*, 883 F.2d 438, 447 (6th Circuit 1989); *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987). Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation. *Hammon v. Barry*, 752 F. Supp. 1087 (D.D.C. 1990); *In re Armored Car Anti-Trust Litigation*, 472 F. Supp. 1357 (N.D. GA 1979); *Sommers v. Abraham Lincoln Federal Savings & Loan Association*, 79 F.R.D. 571 (E.D. PA 1978). The fact that settlement results from arms-length negotiations following "relevant

discovery" creates "a presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership*, 1997 WL 450064, *5 (N.D. Cal. 1997); *See In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave parties clear view of strengths and weaknesses of cases).

Here, the Parties reached a non-collusive settlement after discovery and extended negotiations. The settlement was finally reached after a day of arm's length negotiations before Steve Serratore, a highly-respected mediator, and subsequent negotiations. Obtaining class certification and establishing liability posed significant hurdles for the class that justified the settlement. The Stipulation falls within the range of reasonable outcomes and merits approval under Rule 23(e). (Leviant Decl., ¶¶ 8-9, 11, 13-20.)

### 1.     The Value of the Settlement to the Class Is Fair and Adequate

The Parties reached a Settlement in good faith after negotiating at arm's length with a professional mediator. (Leviant Decl., ¶ 8.) Settlement occurred only after discovery commenced and additional information was shared prior to mediation (including detailed time records for a sample of putative class members). The information produced in discovery, and the additional data about class composition produced for mediation, were sufficient to permit Plaintiff's counsel to adequately evaluate the settlement. And, notably, approval of a class action settlement does not require that discovery be exhaustive. *See*, *e.g.*, *In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases). The fact that settlement results from arms length negotiations following "relevant discovery" creates "a presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership*, 1997 WL 450064, at *5 (N.D. Cal. 1997).

With respect to the claims asserted on behalf of the Settlement Class in this case, there are significant risks that support the reduced compromise amount. These risks include, but are not limited to: (i) the risk that Plaintiff would be unable to establish liability for allegedly unpaid straight time or overtime wages, *see Duran v. US Bank Nat'l Ass'n*, 59 Cal. 4th 1, 39 & fn. 33 (2014) ("*Duran*"), citing *Dilts v. Penske Logistics, LLC*

2014 WL 205039 (S.D. Cal. 2014) (dismissing certified off-the-clock claims based on proof at trial); (ii) the risk that Defendant's challenged employment policies might not ultimately support class certification or a class-wide liability finding, *see, Duran*, 59 Cal. 4th at 14 & fn. 28 *(*citing Court of Appeal decisions favorable on class certification issue without expressing opinion as to ultimate viability of proposition); (iii) the risk that uncertainties pertaining to the ultimate legality of Defendant's policies and practices could preclude class-wide awards of statutory penalties under Labor Code §§ 203 and 226(e); (iv) the risk that individual differences between Settlement Class Members could be construed as pertaining to liability, and not solely to damages, *see, Duran*, 59 Cal. 4th at 19; (v) the risk that any civil penalties award under the PAGA could be reduced substantially by the Court in its discretion, see Labor Code § 2699(e)(1); (vi) the risk that class treatment could be deemed improper as to one or more claims except for settlement purposes; (vii) the risk that lengthy appellate litigation could ensue, (viii) <u>the substantial risk that differences in the work experiences of employees would make both certification and proof of liability prohibitively unlikely</u>.  Defendant strongly denies any liability and the propriety of class certification for any reason other than settlement.  (Leviant Decl., ¶ 16.)  Continued litigation of this lawsuit presented Plaintiff and Defendant with substantial legal risks that were (and continue to be) very difficult to assess.

In light of the uncertainties of protracted litigation, the settlement amount reflects a fair and reasonable recovery for the Settlement Class Members.  (Leviant Decl. ¶¶ 13-20.)  The settlement amount is, of course, a compromise figure.  (Leviant Decl. ¶ 17.)  By necessity it took into account risks related to liability, damages, and all the defenses asserted by the Defendant.  (*Id*.)  Moreover, each Settlement Class Member will be given the opportunity to opt out of the Settlement, allowing those who feel they have claims that are greater than the benefits they can receive under this Settlement, to pursue their own claims. (*Id*.)  For the 719 members of the Class, the average *gross* benefit before deductions for taxes, fees, and other costs, is **$528.51** per class member.  (*Id*.)  The value of this amount reflects a fair compromise well within the range of reasonableness.  Given

the strong case that Defendant could bring to bear to challenge certification and liability, this is not an inconsequential sum.  And, confirming the fundamental fairness of the settlement, <u>each Class Member</u> will be compensated ratably based on the number of weeks they that they worked in a relevant position during the class period (the Class members worked full time schedules, rendering allocation by work week equitable). (*Id*.)

The Gross Settlement Amount of **$380,000.00** is about **94.47%** of the **$402,253.16** estimate of *risk-adjusted* recovery (excluding interest) at *this* stage in the litigation. While Plaintiff would have preferred to recover more (and Defendant would have preferred to pay less), this outcome is in line with a carefully constructed estimate of the current fair value of the case.  (Leviant Decl., ¶ 18.)  On that basis, it would be unwise to pass up this settlement.  The maximum damage values are estimates based on average wage rates, numbers of employees, and the amount of time covered by the class period.  (*Id*.)

After analyzing the claims in this matter, Plaintiff has concluded that the value of this Settlement is fair, adequate and reasonable. (*Id*.)  The maximum calculated reasonable exposure, after removing the *most* implausible or extreme estimated recoveries, is **$2,347,135.40**, *including* PAGA penalties (which, nevertheless, includes a highly optimistic view of what could be proven in this matter).  (*Id*.)  The risk-adjusted value of each claim, on a claim-by-claim basis, is as follows:

- The estimated exposure for off the clock work over the class period was calculated to be **$85,947.00** (assuming computer start-up time).  With risk factor discounts for certification (estimated at 0.4) and liability proof (estimated at 0.35), the current value of that claim is estimated by Plaintiff's counsel to be only **$12,036.36**.

- The reasonably estimated exposure for rest break violations over the class period was calculated at **$299,242.20**, but with low chances of certification and proof of liability (30% and 20% respectively) for a risk-adjusted exposure of **$17,974.53** (based on an extreme estimate of one rest period violation for *every* Class Member in ***100%*** of their work weeks).

- The reasonably estimated exposure for meal break violations over the class period was calculated at **$77,078.20** before any risk reductions, but with chances of certification and proof of liability (40% and 35% respectively) for a risk-adjusted exposure of $10,790.95 (based on facial violations in data and an assumed percentage of violations that would not be deemed voluntary).

- The reasonably estimated exposure for unreimbursed expenses over the class period was calculated at **$12,125.00** before any risk reductions, but with chances of certification and proof of liability (40% and 40% respectively) for a risk-adjusted exposure of $1,940.00.

- Risk-adjusted penalty recoveries for wage statement and Labor Code § 203 penalties were estimated to be approximately **$61,330.50** and **$110,960.82**, respectively, on maximum exposures of **$227,150.00** and **$410,966.00**, respectively (not only are the Section 203 and 226 penalties entirely dependent on the success of the unpaid wage claims, they both must also overcome the defense that Defendant did not intend any underpayment; additionally, the 226 penalty has a one-year statute).

- Performing risk-adjusted valuations for all claims yields a total value in the range of only **$219,603.16**, excluding PAGA.[6] (*Id.*) PAGA penalties were calculated as having a maximum realistic exposure of **$1,217,600.00**, but a risk adjusted value of **$182,640.00**, after factoring in risks of reduction in penalties pursuant to Court discretion and the high risk of the inability to prove violations for all aggrieved employees. (Leviant Decl., ¶ 18.)

This result here is fully supportable as reasonable. First, rest break and meal period claims have been challenging to certify for many years, even after *Brinker*. (Leviant Decl.,

---

[6] In a sense, it is nonsensical to assign specific percentages to future events, but it does provide a specific method for attempting to reduce the concept of "very high risk" or "high risk" to a quantifiable amount. Certification of a claim is typically a binary event. One does not obtain a 20% certification; a claim is either certified or it is not. But the current expected value is best quantified by applying a risk reduction, based on the total experience of counsel.

¶ 19.)  Second, off-the-clock claims have proven to be extremely difficult to certify by their very nature.  In this case, the difficulty of certifying and proving off-the-clock and meal period claims is compounded by the practice of having employees enter their own times manually in a timekeeping system which they confirm as accurate each week.  Third, certification rates are lower than conventional wisdom holds.  *See*, *e.g.*, *Findings of the Study of California Class Action Litigation*, 2000-2006, available at http://www.courtinfo.ca.gov/reference/documents/class-action-lit-study.pdf (finding, as part of a study conducted by the Judicial Council of California, at page 5, and in Table 9, at page 15, that only 21.4% of all class actions were certified either as part of a settlement *or* as part of a contested certification motion).  In estimating risk adjustments here, Plaintiff's counsel has assumed estimated certification probabilities that equal or substantially *exceed* the average rate at which cases were certified in California over the study years, based upon data available through the California Courts website. (*Id.*)  And those certification risk estimates are likely high, given the factual challenges present in this case in particular.  Given that well under 20% of all cases filed in California as proposed class actions are ultimately certified by way of a contested motion, and a similar trend is seen in federal courts, it is fair to say that, if anything, the use of high estimates for certification *overstates* the realistic current claim value.  (*Id.*)  It would also be appropriate to evaluate the result by examining only the premium wages at issue, excluding penalties and interest.[7]  Under that metric, the settlement recovered an amount approximately equal to 79% of the realistic unreduced claim value for the premium wages at issue ($479,294.40, for wages, and meal and rest period premiums). Viewed either way, this

---

[7] The exclusion of interest and penalties from the fairness evaluation is proper because, first, PAGA penalties are discretionary (*see* Lab. Code § 2699(e)(2) (the court in its discretion "may award a lesser amount than the maximum civil penalty amount specified by this part…")), and, second, courts evaluate the strength of a proposed settlement without taking potential penalties or interest into consideration.  *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 955 (9th Cir. 2000); *see also Miller v. CEVA Logistics U.S.A., Inc.*, 2015 WL 729638, at *7 (E.D. Cal. Feb. 19, 2015) (court utilized calculation of a defendant's exposure exclusive of interest and penalties to determine whether the settlement fell within the range of possible approval).

Settlement achieves the goals of the litigation.

By obtaining reasonable value for their claims in light of the substantial risks of litigation, Plaintiff clearly achieved a fair settlement that merits approval, particularly in light of the risks posed by further litigation.

### 2. The Fee Award Is Reasonable and Should Receive Final Approval

#### a) A Reasonable Result Was Achieved on Behalf of the Class

The benefit achieved on behalf of class members defines a primary yardstick against which any fee motion is measured. *See Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977); *accord Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) (identifying similar criteria). One of the most straightforward measures of a settlement's success from the Plaintiff's perspective is the average amount available to each class member from the settlement fund. For the **719** members of the Class, the average *gross* benefit before deductions for taxes, fees, and other costs, is **$528.51** per class member. (Leviant Decl., ¶ 16.) Given the risks identified at Preliminary Approval, this result is commendable.

How class members respond to a class action settlement is typically addressed in concert with courts' assessments of a settlement's overall benefit to class members. *See generally*, *Vizcaino*, *supra*. State and federal courts alike take the measure of a settlement's "fairness" with reference to the class members' reaction, and specifically the extent to which class members object, and through their objections imply a settlement's unfairness. *See, e.g.*, *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1152-53 (2000) (only nine objectors from a class of 5454 was an "overwhelmingly positive" fact that supported approval of the settlement); *Reynolds v. National Football League*, 584 F.2d 280 (8th Cir. 1978) (16 objectors out of 5400 strongest evidence of no dissatisfaction with settlement among class members); *American Eagle Ins. Co. v. King Resources Co.*, 556 F.2d 471, 478 (10th Cir. 1977) (only one objector "of striking significance and import"). With no objections and only three exclusion requests, Class Member satisfaction with the Settlement is demonstrated.

b)      The Experience, Reputation, and Ability of Class Counsel

California law also recognizes the "skill and experience of attorneys" as appropriate criteria for evaluating a fee motion.  *Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 647 (1995); *accord In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) ("skill and efficiency of counsel" among fee motion criteria); *In re Heritage Bond Litig.*, 2005 U.S Dist. LEXIS 13555 at *64 (C.D. Cal. June 10, 2005) (Considering "the quality of Class Counsel's effort, experience and skill").  Class Counsel has had substantial experience with the causes of action here. (Leviant Decl., at ¶¶ 21-26.)

c)      The Effort Required by the Litigation Justifies the Fee

California and federal law also look to the time and labor required in connection with the litigation and settlement of a class action for which final approval is sought.  *See Serrano*, 20 Cal. 3d at 49, *accord Vizcaino*, 290 F.3d at 1048-50.  Compared to the reasonable value of the claims, Class Counsel expended substantial effort to achieve the settlement result.  (Leviant Decl. ¶¶ 13-20, 31-32.)  The "time and labor" criterion weighs in favor of an award of the requested fees (which are less than the lodestar).

d)      Class Counsel Was Precluded from Other Employment

Another of the criteria for the evaluation of a preliminarily approved fee request is whether the settled litigation resulted in Class Counsel's foregoing other employment. *Serrano*, 20 Cal. 3d at 49; *accord In re Public Serv. Co.*, 1992 U.S. Dist. LEXIS 16326 at *9 (S. D. Cal. July 28, 1992) (the opportunity cost of being precluded from representing other clients in other cases "weighs in favor of an award of one-third of the common fund").  Here, Class Counsel was precluded from other employment, a factor supporting the fee.  (Leviant Decl., at ¶ 28.)

e)      The Complexity of the Legal and Factual Issues

California law recognizes that the litigation's general complexity and "difficulty of the questions involved, and the skill in presenting them" are properly considered.  *Serrano*, 30 Cal. 3d at 49, *accord Wershba v. Apple Computer*, 91 Cal. App. 4th 224, 245 (2001).  Complexity of legal issues was moderate here, though the fee is reasonable, rendering this

1  factor irrelevant.  (Leviant Decl., ¶ 32(a)-(c).)

2          *f)*   *Class Counsel Assumed Substantial Risk*

3     The challenges presented by a class action, as well as the corresponding risk that the

4  class members and class counsel will be paid no recovery or fee, is properly evaluated in

5  connection with a fee motion.  *See Serrano*, 20 Cal. 3d at 49; *accord Vizcaino*, 290 F.3d at

6  1050-51 (multiplier applied to lodestar cross-check reflects risk of non-recovery).

7          *g)*   *The Fee is Reasonable Under the Common Fund Doctrine*

8     Courts in the Ninth Circuit and California generally use the "percentage method"

9  rather than the lodestar approach when awarding fees in a common fund settlement.  *See* 7

10  Witkin, B.E., CALIFORNIA PROCEDURE (2007 Supp.) §§ 255-261 at 236-241 (describing

11  prevalence of percentage method under California law); *Boeing Co. v. Van Gemert*, 444

12  U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the

13  benefit of persons other than himself or his client is entitled to a reasonable attorney's fee

14  from the fund as a whole"); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377-78 (N.D.

15  Cal. 1989) (Patel, J.) (endorsing percentage method).  *See generally*, *Serrano*, 20 Cal. 3d at

16  25; *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

17          *h)*   *A Lodestar Analysis Supports the Requested Fee*

18     The compensation sought for Class Counsel is also fair and reasonable.  Here, the

19  Gross Settlement Amount obtained through the efforts of Class Counsel is $380,000.00.

20  (Leviant Decl., ¶ 11.)  Class Counsel has agreed to request no more than **$126,666.67** in

21  fees from the Gross Settlement Amount, or one-third of the Gross Settlement Amount.

22     Despite the widely recognized limitations of the so-called "lodestar" method,

23  California and federal courts recognize the utility of a lodestar "cross-check."  *Lealao v.*

24  *Beneficial California, Inc.*, 82 Cal. App. 4th 19, 46 (2000).  A lodestar "cross-check"

25  analysis typically happens in three steps.  *Cundiff v. Verizon California*, 167 Cal. App. 4th

26  718 (2008), *accord Vizcaino*, 290 F.3d at 1047.  First, a trial court must determine a

27  baseline guide or "lodestar" figure based on the time spent and reasonable hourly

28  compensation for each attorney involved in the case.  *Serrano*, at 48.  Second, the court

sets a reasonable hourly fee to apply to the time expended, with reference to the prevailing rates in the geographical area in which the action is pending. *Bihun v. AT&T Information System*, 13 Cal. App. 4th 976, 997 (1993) (16 years ago, affirming a $450 per hour rate for a Southern California litigation attorney). Finally, a "multiplier" of the base lodestar is set with reference to the factors described in detail in this brief. Across all jurisdictions, multipliers of up to four are frequently awarded. Compared to a lodestar based on contemporaneously recorded and reasonably projected hours of approximately **$139,134.50**, the total compensation to Class Counsel is less than their recorded lodestar. The "multiplier" to reach the requested compensation is 0.91, *a so-called "negative" multiplier*. Finally, the proposed attorneys' fees were disclosed to the Class Members in the Notice issued to Class Members. (Leviant Decl., at Exhibit 1-A.)

### 3. The Cost Reimbursement Requested Is Reasonable and Should Receive Final Approval

Class action counsel are entitled to a cost reimbursement. *Serrano*, 20 Cal. 3d at 25; *Lealao*, 82 Cal. App 4th at 48. Here, Class Counsel has agreed not seek an amount greater than $20,000 for litigation costs. The amount requested, **$16,718.72**, is well below that cap. (Leviant Decl., ¶ 32 and Exhibit 2.)

### 4. The Service Payment Is Reasonable

Service payment awards serve to reward the named plaintiff for the time and effort expended on behalf of the class, and for exposing herself to the significant risks of litigation. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001); *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997). In *Coca-Cola*, for example, the court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class. *Coca-Cola*, 200 F.R.D. at 694; *see also Van Vranken v. Atl. Richfield*

*Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award).

Here, Plaintiff's counsel requests that the Court grant Plaintiff a service award of $7,500. The amount of the service award is reasonable given the risks undertaken by Plaintiff. Taking the risk of filing a lawsuit against an employer deserves reward. Additionally, Plaintiff was actively involved in the litigation and settlement negotiations of this Action. And Plaintiff worked diligently with counsel to prepare the action and conferred with counsel regarding settlement negotiations. (Dkt No. 26-2: Declaration of Brutout, ¶¶ 5-19; Leviant Decl., ¶ 33.) The requested amount is reasonable.

### 5. The Costs of Administration Are Reasonable

Phoenix Settlement Administrators, an experienced third-party administrator, was appointed to administer the notice and settlement distributions in this matter. (Mitzner Decl., ¶ 2.) Performing in all respects as required by the Agreement to date, the final cost of administration, including future work, is $10,000.00. (Mitzner Decl., ¶ 17.) Phoenix will continue to perform services for the Settlement Class Members when it completes the calculation and distribution of payments made under the Settlement.

## VII. CONCLUSION

Plaintiff negotiated a settlement that resolves claims and recovers money for 719 Settlement Class Members. This settlement is fair and reasonable. Plaintiff asks the Court to grant final approval of the settlement, and award fees, costs, the Plaintiff's service award, and third-party administration fees as requested.

Respectfully submitted,

Dated: September 28, 2023       **MOON LAW GROUP, PC**

By: _____

H. Scott Leviant

Attorneys for Plaintiff